Filed 7/9/13  TownCenter Plaza v. Hems CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TOWNCENTER PLAZA, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KENTON HEMS, as Successor Co-Trustee, etc., et al.,<br><br>    Defendants and Respondents. | D060560, D061581<br><br><br>(Super. Ct. No. 37-2009-00101364-CU-BC-CTL) |


CONSOLIDATED APPEALS from a judgment and an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.


Pistone & Wolder, Thomas A. Pistone and Eric J. Medel for Plaintiff and Appellant.

Higgs, Fletcher & Mack and Mark K. Stender for Defendants and Respondents.

Plaintiff, TownCenter Plaza, LLC (TownCenter), appeals a summary judgment for defendants,[1] entered after the trial court determined TownCenter cannot prove the breach and causation elements of its breach of contract claim against defendants for not disclosing a geothermal lease on unimproved property it sold TownCenter, because before the purchase TownCenter had notice of the lease through the preliminary title report and publicly recorded documents. (Civ. Code,[2] §§ 19, 1213.) TownCenter contends the judgment is improper because defendants did not meet their initial burden of producing evidence showing entitlement to judgment as a matter of law, and thus the burden of production never shifted to TownCenter, and alternatively, TownCenter's evidence raised triable issues of material fact. We conclude the court correctly determined the causation issue, and thus we affirm the judgment.

TownCenter also appeals a postjudgment order awarding defendants costs and contractual attorney fees. Because we affirm the judgment we also affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1983 defendants or their predecessors in interest purchased 131.7 acres of raw land in the Calexico, California, area. The property was subject to a geothermal lease by

---

[1] Defendants are Kenton Hems, as successor trustee of the Richard Ellis Trust UDT 8/22/76; Johnny Sonza; Michelle Sonza; Nicola Curtis; Emil Michael Hashem III, as trustee of The Michael Hashem 1999 Trust U/D/T dated 4/14/99; William J. Polkinhorn and Rae Lynn Polkinhorn, as trustees of The Polkinhorn Family Living Trust U/D/T dated 9/10/91; Emil Michael Hashem III, as trustee of The Emil Michael Hashem II 1998 Trust U/D/T dated 9/25/98; and Gary Robinson, as successor to Daniel O. Robinson.

[2] Further statutory references are also to the Civil Code.

2

Standard Oil Company of California (Standard Oil), recorded in 1970. The lease provided it was to remain in force for a "primary term" of 10 years, "and thereafter so long as lease products, or any one or more of them, is produced from, or Lessee is engaged in drilling, extraction, processing or reworking operations on said land."

In March 1979 an amendment to the geothermal lease was recorded, which designated Chevron U.S.A. Inc. (Chevron) as Standard Oil's successor in interest. The amendment extended the primary term of the lease by five years and did not affect the potential of an extended term. In July 1979 a document entitled "Unit Agreement[:] Heber Geothermal Unit" (unit agreement, some capitalization omitted) was recorded. The unit agreement was among Chevron and property owners who held "interests in Geothermal Resources in the area of the Heber Geothermal Anomaly," including defendants, and its purpose was "to prevent the waste of natural resources, promote conservation and maximize the total ultimate recovery of geothermal resources from lands subject to this Agreement with minimum disturbance of surface land use through prudent development of the resources." The unit agreement states "such prudent development can be best effected through the unitization and cooperative development of the lands subject to this Agreement."

In the mid-2000's, defendants listed their property for sale. On January 18, 2006, TownCenter's principal, Kevin G. Smith, made an offer on a California Association of Realtors form to purchase the property for $5.736 million. Defendants made a counteroffer for $6.311 million, and on January 20, 2006, Smith signed an acceptance.

3

Defendants, however, did not fully execute the counteroffer until late February 20, 2006.[3]

Under paragraph 6(B) of the purchase agreement, defendants were required, within the period set forth in paragraph 18, to "make available to Buyer for inspection and review, all current leases, rental agreements, service contracts and other related agreements, licenses, and permits pertaining to the operation or use of the Property." Under paragraph 14(C) of the purchase agreement, defendants were also required, within the period set forth in paragraph 18(A), to "disclose to Buyer all matters known to [defendants] affecting title, whether of record or not." The applicable period in paragraph 18 was seven days.

Paragraph 10(D) of the purchase agreement states: "NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important." (Boldface type omitted.)

Paragraph 12 of the purchase agreement provides:

> "B. Buyer shall complete Buyer-Investigations and, as specified in paragraph 18, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete copies of all Buyer investigation reports obtained by Buyer. Seller shall make Property available for all Buyer investigations. . . . [¶] BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER

---

[3] We refer to the contract documents together as the purchase agreement.

DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OF DESIRABILITY OF THE PROPERTY."

Paragraph 14(B) of the purchase agreement states, "Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing."

Under paragraph 18(B) of the purchase agreement, Smith had 45 days from the date of acceptance "to complete all Buyer investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property." Similarly, paragraph 30 of the purchase agreement, which consists of handwritten conditions, gave Smith 45 days to conduct "[d]ue diligence." Paragraph 30 also provides, "Sellers to deliver all documents, reports & maps to buyers for proper [i]nve[s]tigation and facilitate all [i]nvestigation."

In January 2006 an escrow was opened with Chicago Title Company (Chicago Title). Defendants concede that during the due diligence period, they did not directly provide Smith with any documents or information pertaining to the geothermal lease, the amendment to the lease, or the unit agreement. One of the defendants believed they lost

5

an earlier deal for sale of the property because the prospective buyer was concerned about the lease.

On February 3, 2006, however, Chicago Title provided Smith's broker with a preliminary title report dated December 29, 2005. Additionally, on February 7, 2006, Chicago Title e-mailed Smith a copy of the report directly. The report's cover page states: "Please read the exceptions shown or referred to in Schedule B and the exceptions and exclusions set forth in the attached list of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of title insurance policy and should be carefully considered. It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land."

Schedule B of the title report designates exceptions to coverage. Item 10 of Schedule B excepts the recorded geothermal lease with Standard Oil, and the recorded amendment to the lease. As to these exceptions, Schedule B states, "The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein." Item 13 of Schedule B excepts the recorded unit agreement. Further, item 15 notes that in December 1991, Heber Field Company recorded a request for notice of any default by defendants on the trust deed for the property.

In late October 2006 while escrow still remained open, defendants learned that "other lessor-landlords in the Heber Geothermal Unit had sued the lessee-tenant for royalties," and received a settlement. The successor lessee of defendants' property, Heber Field Company (Heber), contacted them and offered to enter into a settlement and amendment to the geothermal lease to give defendants the same increase in royalties the litigants obtained. Since the property was in escrow, defendants sent Heber's proposal and related documents to Smith's broker.

Smith claimed this was his first knowledge of the geothermal lease, and, although escrow had not closed, by this time he had already spent several hundred thousand dollars on mapping and otherwise pursuing a proposed development on the property. He was concerned that the geothermal lease would prevent him from obtaining financing and proceeding with development.

In an effort "to hold the deal together," defendants agreed to attempt to resolve Smith's concerns with Heber. In April 2007 an agreement was negotiated under which, after close of escrow on the property, TownCenter would convey six acres of the property to Heber for the operation of geothermal activities, in exchange for Heber's release of *surface* rights to the remaining 127.5 acres. In all other respects, the geothermal lease remained in force. TownCenter closed escrow on the property on May 7, 2007.[4]

---

[4] TownCenter's opening brief states, "In approximately November or December of 2006, *at least 10 months after close of escrow*, . . . Sellers first disclosed the existence of the geothermal lease" to Smith. (Italics added.) The record does not support the italicized language. The defendants notified Smith of the potential settlement with Ormat

7

In February 2010 TownCenter filed a first amended complaint (complaint) against defendants for breach of contract.[5]  The complaint alleged defendants breached paragraphs 6, 14 and 18 of the purchase agreement by not disclosing the geothermal lease, or that they were receiving royalty payments, until November 2006, after TownCenter "invest[ed] hundreds of thousands of dollars in escrow extension and various real estate development fees."  The complaint sought damages of approximately $560,426, attributable to TownCenter's "surrender" of six acres of the property to Heber and wasted development costs for the six acres.

Defendants moved for summary judgment, arguing there was no breach of contract because in early February 2006, before they had even fully executed their counteroffer, they met their duty of disclosure by causing Chicago Title to provide Smith with the preliminary title report, which identified the geothermal lease as an exception to coverage.  Alternatively, defendants argued there was no nexus between the alleged breach and damages, because Smith was on notice of the geothermal lease and his lack of due diligence was the causative factor.  Again, the geothermal lease was excepted in the preliminary title report, and further, the geothermal lease, the amendment to the lease, and the unit agreement were all matters of public record.

---

more than six months before the close of escrow.  TownCenter's brief later acknowledges escrow closed in May 2007.

[5]     The complaint also included a cause of action for negligent misrepresentation, but it was resolved in defendants' favor on demurrer.

8

The court ruled in defendants' favor, determining that as a matter of law TownCenter cannot prove the elements of breach and causation because through the preliminary title report Hems had notice of the geothermal lease before he accepted defendants' counter-offer. Judgment was entered for defendants on July 15, 2011.

DISCUSSION

I

*Standard of Review*

Code of Civil Procedure section 437c, subdivision (c) provides for summary judgment when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. "The phrase 'as a matter of law' is another way of saying that the evidence available to the parties, and placed before the court in support of and in opposition to the motion, raises no material issue that a trier of fact could resolve in favor of the party opposing the motion. The function of the motion is thus to provide a mechanism, short of trial, for 'cut[ting] through the parties' pleadings in order to determine whether . . . trial is in fact necessary to resolve their dispute.' " (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

"A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] Despite the shifting burdens of

production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted." (*Garcia v. W & W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041.)

We review a summary judgment ruling de novo, applying the same standards as the trial court. (*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999.) "[W]e accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are accepted as true." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001.)

II

*Damages Element of Breach of Contract Action*

" 'The standard elements of a claim for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." ' " (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999.) TownCenter contends the court erred by finding that as a matter of law, it cannot establish a nexus between the alleged breach of contract and claimed damages.[6]

---

6    TownCenter also contends the court erred by finding that as a matter of law it cannot establish defendants' breach of contract. Because we affirm the court's ruling on the issue of causation, we are not required to consider the breach issue.

"Under contract principles, the nonbreaching party is entitled to recover only those damages, . . . which are 'proximately caused' by the specific breach."  (*Postal Instant Press, Inc. v. Sealy* (1996) 43 Cal.App.4th 1704, 1709.)  " ' "Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." [Citation.]  A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage.  [Citations.]  The term "substantial factor" has no precise definition, but "it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." ' "  (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 871-872.)  The proximate cause issue "is generally a question of fact for the jury, unless, as a matter of law, the facts admit of only one conclusion."  (*Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1123.)

III

*Analysis*

A

*Delivery of Preliminary Title Report*

TownCenter's leading contention is that defendants did not meet their prima facie burden of production, and thus the burden of production never shifted to TownCenter. TownCenter asserts defendants did not submit any competent evidence with their moving papers that they caused the preliminary title report to be delivered to Smith in early

11

February 2006, before the purchase agreement was fully executed by all defendants late that month.

Defendants submitted a declaration by Heather Skains, the escrow agent with Chicago Title who handled the sale of the property. The declaration states, "On or about February 3, 2006, my title officer Clarissa Mars transmitted to Luz Maria Garcia of The Flowers Realty, the broker presenting the buyer, Kevin G. Smith, a preliminary title report dated December 29, 2005 . . . , which had been prepared for her client by the title department of Chicago Title." The declaration states Skain had personal knowledge of this information.

Skain's declaration also states, "Additionally, I am informed and believe on the basis of my review of our file for that transaction that, on or about February 7, 2006, Michelle Vallejo of Chicago Title delivered to Buyer Smith, directly by e-mail, the [preliminary title report]. I am informed and believe that Exhibit G lodged herewith is a true copy of the e-mail by which Ms. Vallejo transmitted the [preliminary title report] directly to Buyer Smith by e-mail."

TownCenter objected to Skains's declaration on the grounds she lacked personal knowledge of the stated matters and it consisted of inadmissible hearsay. TownCenter asserts that given its objection, the court's finding the preliminary title report was delivered to Smith is based on a "mere assumption." The court, however, overruled the objection and allowed the evidence on the ground it was admissible under the business records exception to the hearsay rule. (Evid. Code, § 1271.) In its ruling, the court

12

expressly relied on Skains's declaration in determining Chicago Title delivered the preliminary title report to Smith in early February 2006.

TownCenter ignores the court's evidentiary ruling, and thus it has forfeited appellate review of any arguable error. "In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Thus, we conclude defendants satisfied their initial burden of production. Moreover, in opposition, TownCenter produced no countervailing evidence. In his declaration, Smith did not deny he obtained the preliminary title report in early February 2006. Rather, the declaration states he was unable to confirm the date on which he first received the report. Likewise, in response to a request for admission, TownCenter stated it lacked knowledge of when it received the preliminary title report.

Additionally, in a reply declaration Skains clarified, "I *caused* my title officer Clarissa Mars to transmit" the preliminary title report to Smith's broker. (Italics added.) She also clarified that the documents she discussed in her original declaration "were all kept in my escrow file . . . , of which file I am the custodian, in the ordinary course of Chicago Title's business," and, "I am familiar with the contents of the escrow file." The court correctly determined Chicago Title supplied Smith with the preliminary title report in early February 2006.

13

B

*Sufficiency of Notice*

Alternatively, TownCenter contends summary judgment was improper because even if Smith obtained the preliminary title report in February 2006, and had access to the recorded geothermal lease, the lease amendment, and the unit agreement, "none of these documents establish the existence of an unexpired lease.  To the contrary, these documents only establish that the Calexico Property was once subject to a renewable geothermal lease."  (Italics and boldface type omitted.)  TownCenter asserts the issue of whether it was on notice of the geothermal lease before he purchased the property is a question of fact for the jury.

" 'If future takers purchase a piece of property with notice of a restriction made by a predecessor, then, in the absence of duress or fraud, they may ordinarily be thought to have bargained for the property with the restriction in mind, and to have shown themselves willing to abide by it.' "  (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 366.)  Notice of a matter may be either actual, consisting of "express information of a fact," or constructive, "which is imputed by law."  (§ 18.) "When the law imputes knowledge, it has the same legal effect as though there was actual knowledge."  (*Dolch v. Ramsey* (1943) 57 Cal.App.2d 99, 105.)

"A preliminary title report is an offer 'to issue a title policy subject to the stated exceptions set forth' therein.  . . .  The reports serve to apprise the prospective insured of the state of title against which the insurer is willing to issue a title insurance policy."

14

(*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1389.)  In finding the preliminary title report by Chicago Title put Smith on notice of the geothermal lease, the trial court relied on section 19, which provides:  "Every person who has actual notice of circumstances sufficient *to put a prudent man upon inquiry* as to a particular fact, has *constructive notice* of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Italics added.)  "A person is presumed to have knowledge of the contents of an instrument executed by him *or in his possession* [citation], and with the facts concerning which the recitals in the instrument would put a prudent man upon inquiry."  (*Wilson v. Coffey* (1928) 92 Cal.App. 343, 349, italics added [buyer presumed to have knowledge of contents of escrow instructions].)

TownCenter submits that the preliminary title report gave Smith no reason to inquire into the geothermal lease because the cover page of the report advised it "is not a written representation as to the condition of title."  This language is unavailing.  The full paragraph states, "Please read the exceptions shown or referred to in Schedule B and the exceptions and exclusions set forth in the attached list of this report carefully.  *The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of title insurance policy and should be carefully considered.*  It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land."  (Italics added.)  Notice in a preliminary title report that it is not an abstract of title

15

does not relieve a buyer of his or her duty of inquiry as to matters expressly excepted from a prospective title policy. The exceptions stated in the preliminary title report were sufficient as a matter of law to put a prudent person on notice of the geothermal lease.

Moreover, the court determined that even if the preliminary title report had not been delivered to Smith in early February 2006, defendants were entitled to summary judgment under section 1213. The statute provides in part: "Every conveyance of real property or an estate for years therein acknowledged or proved and certified and *recorded* as prescribed by law from the time it is filed with the recorder for record is *constructive notice* of the contents thereof to subsequent purchasers and mortgagees." (§ 1213, italics added.)

" 'The act of recording creates a conclusive presumption that a subsequent purchaser has constructive notice of the contents of the previously recorded document.' " (*612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1278.)[7] A failure to search the public records "does not diminish the effect of the recorded instrument as imparting constructive notice to a person who lacks actual, imputed or implied notice of the instrument." (Miller & Starr, Cal. Real Estate (3d ed. 2012), § 11:60, fn. omitted; *Alhambra Redevelopment Agency v. Transamerica Financial Services* (1989) 212 Cal.App.3d 1370, 1377.) "It is common knowledge" that as a result

---

[7] "Additionally, a party may not ignore information coming from outside the recorded chain of title, to the extent such information puts the party on notice of information that reasonably brings into question the state of title reflected in the recorded chain of title." (*612 South LLC v. Laconic Limited Partnership, supra,* 184 Cal.App.4th at pp. 1278-1279.) The preliminary title report was unrecorded information putting TownCenter on notice of the geothermal lease.

16

of section 1213's constructive notice provision, "[m]any purchasers will purchase land only if they can secure title insurance."  (*Greeninger v. New Amsterdam Casualty Co.* (1957) 152 Cal.App.2d 645, 647.)

TownCenter does not suggest the geothermal lease documents were not properly recorded.  Further, TownCenter cites no language from the recorded documents indicating the geothermal lease no longer burdened the property.  " ' "The appellate court is not required to search the record on its own seeking error."  [Citation.]  Thus, "[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived." ' "  (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 502-503.)

In any event, after reviewing the recorded documents we conclude they gave TownCenter constructive notice of a current geothermal lease on the property.  The lease provided for a "primary term" of 10 years, "and thereafter so long as lease products, or any one or more of them, is produced from, or Lessee is engaged in drilling, *extraction*, processing or reworking operations on said land."  (Italics added.)  The amendment to the lease extended the primary term of the lease by five years and does not affect the lessee's extended term rights.  Likewise, the unit agreement does not affect the term of the lease. The lease contains a provision pertaining to the lessee's right to surrender the lease, but there is no indication in the subsequent recorded documents or the preliminary title report of any surrender.

17

Although Smith did not observe any lessee activity when he visited the property, the unit agreement was intended to minimize "disturbance of surface land use."[8] Even if the recorded documents were arguably ambiguous, a purchaser " 'is not entitled to interpret ambiguities in his own favor nor is he entitled to ignore reasonable warning signs that appear in the recorded documents.' " (*612 South LLC v. Laconic Limited Partnership*, *supra*, 184 Cal.App.4th at p. 1279.) At the least, the recorded documents were a red flag requiring investigation.

We also reject TownCenter's assertion, unsupported by any legal authority, that the duty of inquiry was excused because compliance would be too onerous. TownCenter claims that since the lessee's operation was not visible from the surface of the property, to ascertain whether the geothermal lease remained in effect Smith "would [have to] to investigate the history of 'drilling, extraction, processing, or reworking operations' within the unit area *as that area existed at various times during the past 3 decades. . . .* Likewise, [he] would also need to trace the rights of the record lessee . . . from Chevron . . . through [the] ultimate assignment to the present lessee, Ormat, in order to determine the identity of the lessee." (Boldface type omitted.) To the contrary, Smith could have easily contacted defendants or their broker and requested the status. As the trial court observed at the hearing, "I think it probably was a matter of a couple of phone calls."

---

[8] Defendants produced evidence that "it is . . . common knowledge among real estate developers and real estate agents in the Imperial Valley that geothermal leases are usually 'unitized' so that geothermal energy is normally extracted from the subsurface by the use of remote, off-site drilling and pumping operations, to the effect that one is not likely to see a pumping station on a particular parcel that is subject to a geothermal lease."

We agree that TownCenter had notice of the geothermal lease before it purchased the property or reasonably incurred development expenses, and a jury could not reasonably find otherwise.  Thus, it cannot establish its damages were proximately caused by defendants' alleged breach of contract, and the appeal of the judgment lacks merit.  The appeal of the order awarding fees also lacks merit, because it is based on the argument the judgment is improper.

## DISPOSITION

The judgment and order are affirmed.  Defendants are entitled to costs on appeal.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


McDONALD, J.

19