[No. D056646. Fourth Dist., Div. One. May 25, 2010.]

612 SOUTH LLC, Plaintiff and Appellant, v.
LACONIC LIMITED PARTNERSHIP, Defendant and Appellant.

COUNSEL

Niesar & Vestal, Peter L. Vestal, John A. Kelley; Ward & Ward, Alexandra S. Ward; Nichols Professional Law Corp. and Alan Nichols for Plaintiff and Appellant.

Law Offices of Hall & Bailey and John L. Bailey for Defendant and Appellant.

OPINION

McINTYRE, J.—In this case, a bondholder sought and obtained a judgment ordering the foreclosure and sale of property subject to a water district bond issued under the provisions of the Improvement Act of 1911 (the 1911 Act; Sts. & Hy. Code, § 5000 et seq.) and the Municipal Improvement Act of 1913 (the 1913 Act; Sts. & Hy. Code, § 10000 et seq.). (Undesignated statutory references are to the Streets and Highways Code.) The property owner appeals from that part of the judgment ordering (1) a personal deficiency judgment against it and (2) the award of $139,516 in attorney fees to the bondholder for prosecuting the action. The property owner also appeals from a postjudgment order setting the appellate bond amount, arguing that amount was excessive because the court improperly entered a deficiency judgment. In a cross-appeal, the bondholder challenges the attorney fee and cost award on the ground that the trial court erred by deciding the matter without a noticed motion or consideration of all the evidence.

We reject the property owner's contention that failure to index the notice of assessment under the name of the property owner in the county recorder's

office rendered the lien invalid, and that the property owner was a bona fide purchaser without notice of the assessment. We conclude, however, that the court improperly entered a deficiency judgment against the property owner, and reverse that portion of the judgment. This conclusion renders moot the arguments regarding the propriety of the appellate bond, and we order the trial court to exonerate the bond.

We also conclude the trial court abused its discretion in deciding attorney fees and costs without consideration of all the evidence. Accordingly, the matter is remanded for further proceedings to determine attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1987, the Twentynine Palms Water District (the District) annexed 3,098 parcels of real property to create assessment district No. 4. Assessment district No. 4 included 40 acres of vacant land known as assessor's parcel No. 634-111-20 (the Property). The District designated the Property as diagram assessment No. 3024, and assessed the Property's then owner, Hector Velez, approximately $22,000. Velez informed the District that rather than paying the assessment in full, he preferred to finance the cost by having the District issue and sell a bond, which enabled him to pay off the assessment amount over time. The District issued street improvement bond No. 2217 under the 1911 and 1913 Acts (the Bond). The District sold the Bond to plaintiff 612 South LLC's (612 South) predecessor in interest, which then transferred the Bond to 612 South.

Velez made assessment payments to the District, with the District paying the bondholder, for about 10 years. In 1998, Velez defaulted on the Bond. In 2003, defendant Laconic Limited Partnership's (Laconic) predecessor in interest, Repo4Sale, acquired the Property following a public auction of the tax-defaulted property. In December 2003, the District sent a letter to Repo4Sale notifying it of the Bond's delinquency. However, the District never received any further payments. At trial, 612 South admitted that it did nothing between 1999 and 2003 to collect on the Bond.

In February 2006, Laconic purchased the Property for $89,000. In March 2006, 612 South's counsel sent Laconic the prelitigation notice required by section 6610, advising of the delinquent amount then due on the Bond and providing Laconic the required 15-day grace period in which to pay the amount due to avoid a judicial foreclosure action. (§ 6610.) The notice indicated that interest of $1,922.55 and penalties of $12,297.37 had accrued on the $7,324 in principal, and that the bond payoff amount was $21,543.92. In May 2006, 612 South filed this judicial foreclosure action after Laconic failed to pay the delinquent amount.

In January 2008, the court denied 612 South's summary judgment motion on the ground a triable issue of fact existed as to whether the Bond was properly created or recorded so as to impart proper notice to the property owners. In September 2008, the court conducted a bench trial. Following the conclusion of trial testimony, the parties submitted supplemental briefing regarding attorney fees and the personal liability of Laconic for any judgment.

Ultimately, the trial court issued a statement of decision finding that 612 South held the Bond created under the 1911 and 1913 Acts; Laconic owned the Property securing the Bond; the Bond payments were delinquent; and Laconic had recieved prelitigation notice of the delinquency. The trial court concluded that Laconic had actual, constructive, or inquiry notice of the assessment, and that 612 South was entitled to foreclosure sale of the Property and an award of attorney fees. To the extent the amount realized from the foreclosure sale was insufficient to satisfy the defaulted principal, interest, and penalties due on the Bond, and 612 South's costs and reasonable attorney fees, the court held that 612 South was entitled to a personal judgment against Laconic for the judgment balance.

The trial court entered a judgment for foreclosure, order of sale, and in personam recovery of deficiency, awarding 612 South a total of $172,669.30, including $139,516 in attorney fees and $5,691.60 in costs. Both parties timely appealed. Laconic subsequently moved the trial court to stay execution of the judgment and fix the amount of an appellate bond to protect 612 South's judgment during pendency of the appeal. The trial court fixed the appellate bond at $259,003.95 if posted by a qualified surety, or at $345,338.60 if posted by Laconic or a nonqualified surety. A qualified surety posted a bond on behalf of Laconic.

## DISCUSSION

### I. *Laconic Had Notice of the Assessment*

#### A. *Laconic's Contentions*

Among other things, Laconic defended this action on the ground it was a bona fide purchaser for value without notice of 612 South's lien because the documents recorded by the District failed to list the owners of the assessed properties. It claims that the evidence presented at trial shows it had no notice of any kind, except that a water bond would be collected with taxes, which it paid. Accordingly, Laconic contends that the judgment of foreclosure must be reversed because substantial evidence did not support the trial court's findings.

## B. *Facts*

In accordance with the substantial evidence standard of review, we shall recite the facts established by the record viewed in the light most favorable to the judgment, giving 612 South the benefit of every reasonable inference and resolving any conflicts in the evidence in support of the judgment. (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1254–1255 [54 Cal.Rptr.2d 340].) Because Laconic's challenge is confined to whether the evidence supports the trial court's finding that it had actual, constructive, or inquiry notice of the assessment, we limit our discussion of the facts to this issue.

In October 1987, the District recorded a notice of assessment in the San Bernardino County Recorder's Office. The notice stated that an assessment and diagram had been recorded in the office of the superintendent of streets under section 3114. The notice also stated that upon its recordation, the assessments for the parcels shown on the diagram became liens on the property. Recorded with the notice of assessment was a list of parcel numbers included in the District's water assessment district. Included in this list was the parcel number for the Property. The District later recorded a number of assessment diagrams, showing the boundaries of the assessment district.

Before Laconic purchased the Property it obtained a preliminary title report indicating that the Property had: "The lien of special tax for the following municipal improvement bond, which tax is collected with the county taxes. [¶] District: Twenty-Nine Palms." After reading the statement in the preliminary title report, Laconic understood it referred to a tax and assumed that the tax had been paid because Laconic paid its taxes. Laconic did not contact escrow to inquire about this statement, nor did it take any steps to investigate the statement. Laconic did not know about the delinquent Bond before the close of escrow.

Diana Hernandez, a representative of the San Bernardino County Recorder's Office, testified that her office and all other recorder's offices in the state rely on "The Recorder's Document Reference and Indexing Manual, A Training and Reference Manual for Statewide Recording and Indexing Personnel" (the Manual) to perform their job duties. The Manual lists four requirements to record a notice of assessment for a district: the name of the assessment; date of the assessment; description of the property; and signature of the district clerk. The names and addresses of the property owners "may be included" but are not required. Hernandez was not aware of any other requirement that the names of property owners be included in a notice of assessment for a district.

Hernandez testified that the District recorded a notice of assessment that complied with the requirements set forth in the Manual. Hernandez searched for the notice of assessment in the grantor-grantee index under the name of the property owner and the District. She located the document under the name of the District, but not under the name of the property owner. Hernandez also stated that the notice of assessment could be located by the instrument number assigned to the document.

Steven Gallagher, 612 South's expert witness, testified that the records of Laconic's title insurance company included an assessor's map showing the location of the Property and revealed that a water lien existed on the Property under the 1911 Act. Information concerning the lien included the assessment number, the date of the assessment, the number of years for the assessment, and stated "1911" above the notation for the last payment made.

## C. The Trial Court's Findings and Conclusions

Citing *Talbot v. Wake* (1977) 74 Cal.App.3d 428 [141 Cal.Rptr. 463] (*Talbot*), the trial court concluded that filing the notice of assessment and an assessment diagram in the appropriate office constituted sufficient recording under the 1911 Act. The trial court noted that California law did not require that notices of assessment or assessment diagrams be indexed by the county recorder, and that the county recorder's failure to include the name of the property owner did not affect the constructive notice that recording of a document would otherwise provide. Ultimately, the court concluded that Laconic had actual, constructive, or inquiry notice of the assessment.

## D. Legal Principles

### 1. Assessments

A special assessment is a compulsory charge placed by the state upon real property within a predetermined district, made under express legislative authority for defraying the expense of a permanent public improvement within the predetermined district. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 442 [79 Cal.Rptr.3d 312, 187 P.3d 37].) The public improvement financed through the special assessment confers a special benefit on the property assessed beyond that received by the general public. (*Ibid.*) The special assessment tax is levied and collected at the same time and in the same manner as the "general tax levy." (§ 5831.)

After the governing body confirms an assessment, the street superintendent must attach a warrant bearing the date of the confirmation. (§ 5369.) The

warrant authorizes the contractor to demand and receive "the several assessments upon the assessment and diagram hereto attached . . . ." (§ 5371.) The assessment, diagram, and warrant must be recorded in the office of the superintendent of streets (§ 5372), and no person shall be deemed to have notice of the assessment or bond "until a certified copy of the assessment and the diagram attached thereto shall be recorded" in the office of the county surveyor or the superintendent of streets. (§ 5372.1.) After such recordation "all persons shall be deemed to have notice of the contents thereof." (§ 5373.) "The superintendent of streets shall keep a public office in some convenient place within the city, and shall keep such records as may be required by this division." (§ 5680; see § 5011 [" 'superintendent of streets' when used with reference to a county means the county surveyor "].)

The clerk must also record a notice of assessment in the office of the county recorder, "as provided for in Section 3114, whereupon, as provided in Section 3115, said assessment shall attach as a lien upon the property assessed." (§ 5372; see also § 3114, subd. (f).) "From the date of the recording in the office of the county recorder pursuant to Section 3114, . . . all persons are deemed to have notice of the contents of the assessment." (§ 3115, subd. (b).) Additionally, county or city treasurers (§ 5008) must keep a register in their offices regarding the bond (§ 6425), and keep a record of all payment and penalty information (§ 6445).

## 2. Bona Fide Purchaser

■ A buyer is a bona fide purchaser if it bought property in good faith, for value, and had no knowledge or notice of the asserted rights of another. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 [26 Cal.Rptr.3d 413].) " 'The absence of notice is an essential requirement . . . .' [Citation.]" (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 364 [262 Cal.Rptr. 630] (*Gates Rubber*).) The notice necessary to defeat bona fide status may be actual (express information of a fact), or constructive (imputed by law). (Civ. Code, § 18.) To have constructive notice, a person must have notice or knowledge of the circumstances, " 'which, upon reasonable inquiry, would lead to that particular fact.' [Citations.]" (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 436–437 [110 Cal.Rptr.2d 615]; see Civ. Code, § 19.)

■ "The act of recording creates a conclusive presumption that a subsequent purchaser has constructive notice of the contents of the previously recorded document." (*Gates Rubber, supra*, 214 Cal.App.3d at p. 364; see Civ. Code, § 1213.) Additionally, a party may not ignore information coming from outside the recorded chain of title, to the extent such information puts the party on notice of information that reasonably brings into question the state

of title reflected in the recorded chain of title. (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 531 [81 Cal.Rptr.2d 669] (*Triple A*).) Stated differently, a good faith purchaser "is not entitled to interpret ambiguities in his own favor nor is he entitled to ignore reasonable warning signs that appear in the recorded documents." (*Id.* at pp. 530–531.)

Whether a party is a good faith purchaser for value ordinarily is a question of fact that will not be reversed on appeal unless it is unsupported by substantial evidence. (*Triple A, supra*, 69 Cal.App.4th at p. 536.) Under the substantial evidence standard of review we examine the entire record to determine whether there is substantial evidence supporting the factual determinations of the trial court (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925]), viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment (*Jordan v. City of Santa Barbara, supra*, 46 Cal.App.4th at pp. 1254–1255).

E. *Analysis*

The trial court relied on the *Talbot* case to conclude that Laconic had notice of the Bond and assessment lien. (*Talbot, supra*, 74 Cal.App.3d 428.) Laconic asserts that, unlike the defendant in *Talbot*, it had no notice that the lien existed. We disagree.

In *Talbot*, the court interpreted the notice sections of the 1911 Act. First, it concluded that depositing and maintaining the "warrant, diagram and assessment" in the office of the superintendent of streets or the office of the county surveyor complied with section 5372 and provided constructive notice of the contents of these documents. (*Talbot, supra*, 74 Cal.App.3d at p. 436.) In so holding, the *Talbot* court rejected the defendant's argument that "recording" meant entering the information so that a person contemplating the purchase of a particular parcel could review the public record with an owner's name or parcel number in mind and thereby discover any outstanding bonds representing potential liens. (*Id.* at pp. 434, 441–442.)

Second, the *Talbot* court concluded that the defendant had constructive notice because an adequate opportunity for notice existed based on records "in the county recorder's office," the diagram describing the property in the surveyor's office, and records in the treasurer's office. (*Talbot, supra*, 74 Cal.App.3d at p. 442.) Although not expressly stated by the *Talbot* court, we assume that its reference to records in the county recorder's office meant that a notice of assessment had been recorded that listed the subject property. (§§ 5372, 3114, 3115, subd. (b).) Armed with this information, the *Talbot* defendant could obtain information from the treasurer's office regarding the bond (§ 6425), including payment and penalty information (§ 6445).

 Here, unlike *Talbot*, the parties presented no evidence showing that the warrant, diagram and assessment had been deposited and maintained in the office of the superintendent of streets or the office of the county surveyor so as to provide constructive notice of the Bond and assessment lien under sections 5372 and 5373. (*Talbot, supra*, 74 Cal.App.3d at p. 438.) Nonetheless, we conclude Laconic had constructive notice of the Bond and assessment lien because a notice of assessment had been properly recorded at the county recorder's office that listed the parcel number for the property. (§§ 5372, 3114, 3115.) There is no statutory requirement that the notice of assessment be indexed under the name of the property owner; additionally, the recorder's office did not require this.

Even assuming sections 5372, 3114 and 3115 did not create constructive notice, the information in the preliminary title report did. The preliminary title report informed Laconic about the existence of a "municipal improvement bond" lien in the name of the District. With these facts a reasonable person would have investigated the possibility that an assessment lien might have attached to the Property outside the chain of title by contacting the District, searching records at the treasurer's office, or searching records under the District's name in the recorder's office, the office of the superintendent of streets, or the office of the county surveyor. Laconic admitted that it took no steps to investigate the information in the preliminary title report. Although Laconic's assumption that it had paid the lien when it paid its taxes was not wholly unreasonable, it improperly interpreted the information in the preliminary title report in its own favor without any investigation. Thus, it will be charged with knowledge of the information such an investigation would have revealed. (Civ. Code, § 19; *Triple A, supra*, 69 Cal.App.4th at pp. 530–531.)

Accordingly, the trial court properly rejected Laconic's contention that it was a bona fide purchaser because the record reveals that Laconic had constructive notice of the Bond and assessment lien.

## II. *The Deficiency Judgment Was Improper*

Interpreting section 6615, the trial court concluded that in addition to a judgment of foreclosure 612 South was entitled to a personal judgment against Laconic to the extent the amount realized upon sale of the Property was insufficient to satisfy the defaulted principal, interest, and penalties due on the Bond, and 612 South's costs and reasonable attorney fees. Laconic asserts the trial court erred because neither the statute nor general principles of law permitted the court to impose a personal judgment for any deficiency. We agree.

Section 6615 states: "The court may adjudge and decree a lien against the lot or parcel of land covered by the bond and *cause the premises to be sold as*

*in other cases of the sale of real estate by the process of the court to satisfy and discharge the bond and lien,* and the amount of interest and penalties due shall be calculated at the rates and in the manner specified in this part for such calculation of interest and penalties, and shall be calculated and allowed up to the date of judgment. *The court having jurisdiction of the action shall also fix and allow a reasonable attorney's fee for the prosecution of the action.*" (Italics added.) Emphasizing the italicized language, 612 South contends that section 6615 specifically provides that attorney fees are to be fixed and allowed in addition to foreclosure upon a property to satisfy and discharge a bond and lien. In contrast, Laconic asserts that nothing in section 6615 permits the court to assess personal liability for the amounts not satisfied by a sale of the property, and that the statute should be interpreted to add the attorney fees to the lien against the subject property so that the sale of the property would discharge the entirety of the lien plus the attorney fees.

The 1911 Act, in general, and section 6615 do not expressly address the propriety of a deficiency judgment. The parties have offered differing interpretations of section 6615. To the extent section 6615 is ambiguous, we reviewed the legislative history and history of the 1911 Act. (*City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722 [20 Cal.Rptr.3d 322] [when statutory language is reasonably susceptible to more than one meaning it is proper to examine extrinsic aids in an effort to discern the intended meaning].) The Legislature codified the 1911 Act in 1941. (Stats. 1941, ch. 79, § 1, pp. 751, 830.) Prior to its codification in section 6615, the Legislature added an attorney fee provision to former section 76 in 1929. (Stats. 1929, ch. 718, § 2, p. 1306.) We looked but found no additional legislative history for the 1929 amendment.

The parties assert there are no cases directly addressing the propriety of a personal judgment against the property owner for any deficiency after the foreclosure sale of property under the 1911 Act. Our research unearthed *Lee v. Silva* (1925) 197 Cal. 364 [240 P. 1015] (*Lee*), addressing the foreclosure of property under the 1911 Act. (197 Cal. at pp. 366–367.) *Lee* concludes that while the owner of property must be made a party to a foreclosure action under the 1911 Act, the owner is not personally liable for any deficiency. (197 Cal. at pp. 369–370, 375.) The *Lee* court noted that an 1862 statute covering street assessment liens (Stats. 1862, ch. 298, § 17, p. 400) required that a foreclosure action be instituted against the owner of the property and made the owner personally liable for the assessment, but that later statutes dealing with the same subject matter did not provide for the personal liability of the owner. (*Lee, supra,* 197 Cal. at pp. 369–370.)

We agree with the *Lee* court's description of the legislative history for the 1911 Act. The 1862 statute stated: "The person owning the fee . . . shall be

personally liable for the payment of any charge or assessment lawfully made or assessed upon said lands . . . to cover the expense of any work done under and authorized by the provisions of this Act." (Stats. 1862, ch. 298, § 17, p. 400.) This language no longer exists in the 1870 version of the statute. (Stats. 1870, ch. 583, § 17, p. 899.)

■ Admittedly, *Lee* was decided before the 1929 amendment to section 6615; thus, it sheds no light on what the Legislature intended when it added the attorney fee provision. Nonetheless, we reject 612 South's suggestion that while it may not be permissible to hold a property owner personally liable for any delinquent amount due on the bond, the Legislature intended to make property owners personally liable for attorney fees when it added the attorney fee provision to section 6615. We assume that if the Legislature had this objective it would have created some record that it intended to change the current state of the law not allowing for the personal liability of a property owner. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [Legislature " 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof' "].)

■ Moreover, the rationale for special assessments "is that the assessed property has received a special benefit over and above that received by the general public." (*Solvang Mun. Improvement Dist. v. Board of Supervisors* (1980) 112 Cal.App.3d 545, 552–553 [169 Cal.Rptr. 391].) In conformity with this rationale, any action on the assessment should be against the property, and the property owner should not be personally liable for the improvement to the property. (E.g., *Northwestern etc. Co. v. St. Bd. Equal.* (1946) 73 Cal.App.2d 548, 552 [166 P.2d 917] [special assessment can be levied only on land and cannot be made a personal liability of the person assessed]; *City of Marysville v. Freeman* (1930) 104 Cal.App. 456, 457 [285 P. 1051] [citing cases].)

612 South cites *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496 [236 Cal.Rptr. 59] (*Passanisi*) and *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542 [25 Cal.Rptr.3d 783] (*Jones*) for the proposition that even where recovery of a deficiency is expressly precluded by statute, a party may recover its award of attorney fees following foreclosure. These cases are inapposite as they addressed situations where a debtor sought to either stop (*Passanisi*) or set aside (*Jones*) a foreclosure sale under a deed of trust with the attorney fee award being an obligation imposed on the unsuccessful debtor by the deed of trust; thus, the antideficiency provisions of Code of Civil Procedure section 580d did not render the fee award unenforceable. (*Jones* at p. 544; *Passanisi* at pp. 1507–1509.)

Accordingly, we reverse that part of the judgment holding Laconic personally liable for any deficiency after the foreclosure sale of the Property.

### III. *Attorney Fees and 612 South's Appeal*

#### A. *Facts*

In May 2006, 612 South filed this foreclosure action through The Nichols Professional Law Corporation (Nichols). In January 2007, Sequoia Law Group, LLP (Sequoia), associated with Nichols as counsel for 612 South, and represented 612 South at trial. On the first day of trial, 612 South's counsel requested that the trial court reserve the attorney fee issue for a posttrial motion since fees would be awardable to 612 South only if the court found Laconic liable for the delinquent amount due on the Bond. The trial court refused the request, ruling that determination of the amount of attorney fees was "going to be done during the trial" because it did not want to generate even more attorney fees on a $27,000 bond.

On the second day of trial, the trial court announced that it decided to bifurcate the attorney fee issue based on its intention to rule in Laconic's favor on the ground that 612 South had not met its burden of showing notice. The court heard the parties, including 612 South's objection that requiring it to prove its attorney fees and costs during trial would not provide it with a sufficient opportunity to provide complete documentation. The court asked for additional briefing on (1) Laconic's potential personal liability for payment of 612 South's attorney fees and (2) whether the trial court could award Laconic its attorney fees, should it prevail in the action.

Thereafter, 612 South submitted documentation for attorney fees and costs incurred through September 28, 2008. Following the trial court's issuance of its notice of intended decision in favor of 612 South, 612 South submitted supplemental documentation of its attorney fees and costs incurred between October and mid-December 2008. Laconic requested that the trial court strike 612 South's supplemental fees and costs declaration and instead require 612 South to present a noticed motion for fees. 612 South responded that it had no objection to filing a formal fee motion.

Ultimately, 612 South presented documentation showing that Sequoia had performed legal services totaling $225,130 and incurred costs totaling at least $12,214.45 in connection with prosecution of the matter up through December 15, 2008. 612 South also presented documentation showing that Nichols had billed it a total of $18,270 in attorney fees and $806.14 in costs incurred between April 12, 2006, and December 12, 2008. In total, 612 South sought $243,400 in attorney fees. Laconic also presented documentation showing

that from September 2006 through September 25, 2008, its counsel had billed it a total of $48,523 in defending the action and $3,969.50 in costs.

In its statement of decision, the trial court concluded that 612 South was entitled to its reasonable attorney fees in prosecuting the action. The court reviewed the monthly bills and related documentation, applied the lodestar method to evaluate the fees billed, and considered the complexity or novelty of the issues to be decided, the experience of the attorneys involved and the vigorousness of the defense mounted by Laconic. It awarded 612 South $139,516 in attorney fees and $5,691.60 in costs. The trial court, however, did not rule upon Laconic's objections to 612 South's documentation of its attorney fees and costs, or give an explanation for its reductions.

## B. *Analysis*

Laconic asserts that 612 South presented no facts or evidence to establish how its requested attorney fees became 10 times the amount due under the Bond. It therefore claims that the trial court abused its discretion in awarding exorbitant attorney fees. In its cross-appeal, 612 South argues the trial court abused its discretion by denying it the opportunity to bring a formal motion for an award of attorney fees and costs, and by drastically reducing the amounts awarded without providing any explanation for the cuts. 612 South seeks remand of the matter to the trial court to allow it to submit a formal noticed motion for an award of reasonable attorney fees and costs. We conclude that under the unique circumstances of this case the trial court abused its discretion in deciding attorney fees and costs without a noticed motion.

■ Section 6615 authorizes the trial court to "fix and allow a reasonable attorney's fee for the prosecution of the action." In general, a party asking for statutory attorney fees as costs may seek them through four different methods: (1) upon a noticed motion; (2) at the time a statement of decision is rendered; (3) upon application supported by affidavit made concurrently with a claim for other costs; or (4) upon entry of default judgment. (Code Civ. Proc., § 1033.5, subds. (a)(10)(B) & (c)(5).) Unless otherwise provided by statute, a noticed motion is required to determine a reasonable fee. (Cal. Rules of Court, rule 3.1702(a).) A leading practice guide observes that, in practice, a noticed motion is usually required when the attorney fee request depends on an assessment of the amount to be awarded. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2009) ¶ 17:152, pp. 17-96 to 17-97 (rev. # 1, 2009).) As this case demonstrates, good reason exists for requiring a noticed motion.

■ After judgment is entered, the prevailing party has a certain period of time to serve and file a memorandum of costs and separate motion for attorney fees. (Cal. Rules of Court, rules 3.1700(a)(1) & 3.1702(b).) In turn, the losing party may file a motion to strike or tax costs. (Cal. Rules of Court, rule 3.1700(b).) At the hearing on the motions, the verified memorandum of costs is prima facie evidence of their propriety, and the burden is on the party seeking to tax costs to show they were not reasonable or necessary. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131 [84 Cal.Rptr.2d 753].) This procedure provides an orderly and efficient way of placing disputed costs at issue on a line-item basis.

Here, the trial court had before it 123 pages of billing invoices from Sequoia, 4 pages from Nichols, and attorney declarations to support 612 South's request for attorney fees and costs. Although Laconic filed what it termed a request to strike or tax, the trial court provided no indication that it considered the request, or 612 South's response. Interestingly, in their respective filings, both parties indicated a desire to have the issue decided through a noticed motion. Additionally, 612 South was entitled to have the trial court consider its *entire* request for attorney fees, including any fees incurred after the judgment. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶ 17:172.10, p. 17-138 (rev. # 1, 2009).) 612 South, however, never had the opportunity to present evidence regarding the attorney fees it incurred between December 15, 2008, and January 2, 2009, and the record is unclear as to whether the trial court received and considered all of the documentation that 612 South did submit.

Thus, it does not appear that the parties were afforded a fair opportunity to litigate the matter. For this reason, we reverse the trial court's attorney fee and costs award and remand the matter for a determination of the reasonable amount of attorney fees and costs. This conclusion makes it unnecessary for us to address whether the attorney fee award was too high, or not high enough. Nonetheless, we feel compelled to express our astonishment that prosecution of a simple bond foreclosure case could generate over $240,000 in attorney fees; particularly where defense counsel billed less than $50,000 to defend the matter. Additionally, we note that in light of the apparent value of the property, and our determination that 612 South is not entitled to a personal deficiency judgment against Laconic, the parties may be able to stipulate to reasonable attorney fees and costs to avoid a noticed motion.

## DISPOSITION

The personal judgment against Laconic for any deficiency, and the part of the judgment awarding 612 South its attorney fees and costs are reversed. In all other respects, the judgment is affirmed. The matter is remanded to the trial court to exonerate the appellate bond, and for further proceedings to determine attorney fees and costs. The parties shall bear their own costs on appeal.

McConnell, P. J., and Nares, J., concurred.