Filed 1/31/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OC INTERIOR SERVICES, LLC as Trustee, etc., | D070680 |
| Plaintiff and Respondent, | (Super. Ct. No. 30-2009-00126341-CU-CI-CJC) |
| v. | |
| NATIONSTAR MORTGAGE, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge. Reversed and remanded with directions.

Dykema Gossett and Lukas Sosnicki, Brian H. Newman, for Defendants and Appellants.

Songstad & Randall, Songstad Randall Coffee & Humphrey and William D. Coffee for Plaintiff and Respondent.

In this case, plaintiff OC Interior Services, Inc. (OCI) purchased real property knowing about a recorded default judgment in the chain of title that vacated the lien interest of the predecessor-in-interest to appellants Deutsche Bank National Trust

Company, in Trust for the Harborview Mortgage Loan Pass-Through Certificates, Series 2007-7 (Deutsche Bank) and Nationstar Mortgage, LLC (Nationstar, together appellants). The default judgment was later adjudicated as void. The question presented is whether OCI, a purported bona fide purchaser for value, took title to the property subject to appellants' lien. The trial court found that OCI was a bona fide purchaser for value that took title to the property free of appellants' lien. We reverse as the void default judgment was a nullity for all purposes, including as against a purported bona fide purchaser for value.

FACTUAL AND PROCEDURAL BACKGROUND

*The Loan and Default*

In 2007, Roger Hart obtained a $2 million loan from Mirad Financial Group (Mirad) on real property located in Silverado, California (the property). A first deed of trust (First DOT) recorded against the property secured the loan. Mirad sold Hart's loan. The loan was securitized through a pooling and servicing agreement, which created a trust, of which Deutsche Bank serves as the trustee. The trust has owned the loan since 2007. In 2008, servicing rights to the loan were transferred to Aurora Loan Services, LLC (Aurora). Aurora informed Hart of this change.

The First DOT named Mirad as the lender and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and nominee for Mirad, and Mirad's successors and assigns. The First DOT expressly granted MERS the "legal title to the interests granted by Borrower in this Security Instrument" and the right to exercise all of the interests of the Lender (and its successors and assigns thereunder), including the right to

2

foreclose.  The First DOT provided that the original lender could sell the note and deed of trust, one or more times, without notice to the borrower and that the sale might result in a change of the loan servicer.  In 2009, Hart defaulted on the loan.

*The Hart Action*

Hart communicated with Aurora regarding a forbearance agreement.  At the same time, Hart, acting in propria persona, filed a verified complaint against Mirad to cancel the First DOT, loan and promissory note, and for an injunction preventing Mirad and its successors in interest from asserting any right to the property (the Hart Action).  Hart did not allege a claim for quiet title.  Hart did not name MERS or Aurora as defendants.  Hart claimed that he had legally rescinded the loan under the Truth in Lending Act by delivering a notice of rescission to Mirad and that he had repaid the loan in full.

After Mirad failed to respond, Hart obtained a default judgment purporting to cancel and nullify the First DOT, and declaring that Mirad and any successor in interest to Mirad had no interest in the property.  The default judgment expressly ordered Mirad and any successor in interest to record a conveyance of the property to Hart.  On December 31, 2009, Hart recorded the default judgment.

*Sale of the Property to OCI and Voiding the Default* Judgment

After entry of the default judgment, Saeed Paymozd, the sole member of OCI, offered to purchase the property.  The purchase and sale agreement listed the closing date as January 4, 2010, only days after Hart had recorded the default judgment.  OCI paid $750,000 for the property, knowing the custom home on the property was worth $1.5 million.  First American Title Insurance Company (First American) issued a preliminary

3

title report and a title insurance policy to OCI in the amount of $937,500. Neither document referenced the First DOT.

Around the same time that he sold the property, Hart entered into a forbearance agreement with Aurora to forestall Aurora's foreclosure of the property. Hart later conveyed the property to Whitestar International Holdings Ltd. (Whitestar) through a recorded grant deed. Paymozd and Whitestar executed an addendum to the purchase agreement and an assignment of Paymozd's position in the purchase agreement to OCI. Thereafter, Hart defaulted on the forbearance agreement, leading to Aurora's discovery of the default judgment.

In August 2010, Mirad (who had changed its name to BrightGreen Home Loans, Inc.) filed a motion to set aside the default and default judgment in the Hart action under subdivision (d) of Code of Civil Procedure section 473, alleging that Hart served the summons and complaint at Mirad's former place of business and it had no notice of the action. The trial court granted Mirad's motion and ordered that the default judgment purporting to cancel the First DOT was void, vacated, and set aside. The trial court also allowed MERS to intervene in the Hart Lawsuit. MERS, however, later filed a notice of nonintervention, stating that the set aside of the default judgment rendered its intervention moot.

*The Instant Action*

Quality Loans Service Corp. (Quality), the trustee under the First DOT, recorded a Notice of Trustee Sale. About a year after purchasing the property, Paymozd found a copy of the Notice of Trustee's Sale posted to the door of the property. OCI filed the

4

instant action to stop the foreclosure and obtain a determination that the property was not subject to the First DOT. The trial court later ordered the Hart lawsuit and the instant action consolidated for all purposes. In 2012, Aurora transferred the servicing rights for the loan to Nationstar.

OCI and appellants filed cross-motions for summary judgment, alternatively summary adjudication. The primary question was whether OCI took title to the property free of the First DOT based on the recorded default judgment purporting to cancel Mirad's interest in the property. As relevant here, OCI argued in its motion that it was entitled to judgment in its favor because it qualified as a bona fide purchaser for value that relied on the recorded default judgment showing Mirad's interest in the property had been vacated.

In their motion, appellants argued that OCI's claims failed as a matter of law because, even assuming OCI qualified as a bona fide purchaser, a bona fide purchaser could not claim title based on the void judgment; thus, OCI took the property subject to the First DOT. Alternatively, assuming the court rejected its first argument, appellants asserted they were entitled to a judgment in their favor because the undisputed facts show OCI did not qualify as a bona fide purchaser as a matter of law.

The trial court denied appellants' motion; thus, by implication, the court concluded that OCI took title to the property free of the First DOT. The trial court granted OCI's motion for summary adjudication of its first cause of action for declaratory relief, finding that OCI qualified as a bona fide purchaser as a matter of law that took title to the property free of the First DOT. OCI's claims against Hart proceeded to trial. The trial

5

court ultimately found liability against Whitestar on OCI's breach of contract claim for damage to the property caused by a mudslide and awarded OCI $130,718 in damages.

DISCUSSION

I. *General Legal Principles*

Summary judgment is granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850.) The burden of production then shifts to the opposing party to make a prima facie showing of the existence of a triable issue of material fact. (*Ibid.*)

We independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582.) We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142) and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

## II. *Analysis*

Hart did not appeal the ruling declaring the default judgment void and OCI does not dispute that the default judgment is void. Rather, OCI contests the legal effect of the void default judgment in the chain of title. OCI asserts that it relied on the default judgment showing that the First DOT had been vacated and that title to the property passed to it free of the First DOT. Appellants, on the other hand, contend that the void default judgment is a nullity for all purposes and, as a matter of law, title did not pass to OCI free of the First DOT.

As we shall explain, we agree with appellants. We first address the concept of a judgment that is void on the face of the record versus a judgment that appears valid on the face of the record and explain why this distinction makes no difference when a judgment is ultimately declared void. We then explain why even a bona fide purchaser cannot claim title clear of the First DOT based on a void judgment.

## A. Judgments Void or Valid on the Face of the Record

OCI contends that the default judgment was not "void on its face." Rather, OCI asserts that the default judgment plainly provided "on its face" that the First DOT was cancelled, that this had the effect of a recorded reconveyance, and thus, could be relied on by a bona fide purchaser. Appellants assert that the improper service of Mirad rendered the default judgment void, and additionally, the default judgment was "void on its face." The parties misconstrue the term "void on its face" and thus miscomprehend the use of this term in the cited case law.

A judgment may be void on the face of the record, or it could appear to be valid on the face of the record.[1]  (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, §§ 207 [judgment void on its face], 208, 209 [judgment valid on its face], pp. 812-816 (8 Witkin, Cal. Proc.).)  This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment, when the judgment may be attacked, and how the party challenging the judgment proves that the judgment is void.

Either a "direct attack" or a "collateral attack" are the procedural mechanisms available to challenge a judgment that is allegedly void.  A direct attack means an attack on the judgment in the action in which it was rendered, or a proceeding instituted for the specific purpose of attacking the judgment.  (8 Witkin, Cal. Proc., *supra*, § 1, pp. 583-584.)  In contrast, a collateral attack is any procedural challenge that does not constitute a direct attack.  (8 Witkin, Cal. Proc., *supra*, § 6, pp. 590-591.)  For example, a proceeding brought for some purpose other than specifically attacking the judgment.  (*Ibid.*)

Witkin notes that "[t]he First Restatement of Judgments followed the conventional practice in distinguishing direct and collateral attack.  The Second Restatement abandons this terminology, and explains the departure as follows: 'With reference to these various types of relief, traditional terminology undertook to draw a distinction between "direct" and "collateral" attacks on a judgment.  Relief by way of a motion for new trial or an appeal was categorized as direct attack.  Defensive relief, wherein a judgment was

---

[1]     For ease of reference, in discussing the law this opinion uses the term "judgment" and does not distinguish a judgment obtained by default.

8

attacked in the course of another action in which the judgment was relied on by an opposing party, was usually categorized as collateral attack. But other forms of relief were sometimes characterized as "direct" and sometimes as "collateral." . . . [T]he distinction between "direct" and "collateral" attack is not helpful in analysis of the essential questions involved in determining whether relief from a judgment is appropriate in any given set of circumstances. The essential questions are as follows: First, does the person seeking relief have standing to obtain relief from the judgment in question on the ground upon which he relies? Second, is the forum in which relief is sought the appropriate one for considering the particular attack? Third, may evidence be offered in support of the attack when it "contradicts the face of the record"? The rules of this Chapter are formulated in terms of these questions rather than the characterization of an attack as "direct" or "collateral." ' " (8 Witkin, Cal. Proc., *supra*, § 1, pp. 583-584.) This opinion retains the direct attack versus collateral attack distinction because the majority of the case law employs this distinction.

A judgment that is void on the face of the record is subject to either direct or collateral attack at any time. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228 (*Gorham*); *City of Los Angeles v. Morgan* (1951) 105 Cal.App.2d 726, 732 (*Morgan*); 8 Witkin, Cal. Proc., *supra*, § 207, pp. 812-813; 3 Wegner et al., Cal. Practice Guide: Civil Trial and Evidence (The Rutter Group 2016) ¶ 18:509, p. 18-139.) To prove that the judgment is void, the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed. (8 Witkin, Cal. Proc., *supra*, § 11, pp. 594-595; *Johnson v. Hayes Cal Builders, Inc.* (1963) 60 Cal.2d 572, 576 ["The validity of the

9

judgment on its face may be determined only by a consideration of the matters constituting part of the judgment roll."]; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 [" 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll." '].)[2]

In contrast, a judgment that is valid on the face of the record is generally *not* subject to collateral attack. (*Gorham*, *supra*, 186 Cal.App.4th at p. 1228; 8 Witkin, Cal. Proc., *supra*, § 208, pp. 813-814.) In other words, a judgment that is valid on the face of the record must be challenged by direct attack, such as a motion in the original action, an appeal in the original action, or an independent equitable action. (8 Witkin, Cal. Proc., *supra*, § 11(3), pp. 594-595.) A judgment valid on the face of the record may be set aside under Code of Civil Procedure section 473, subdivision (b) within a reasonable time after the party learns of the judgment, or it may be set aside in an independent equitable action without time limit. (*Gorham*, *supra*, 186 Cal.App.4th at p. 1228; 8 Witkin, Cal. Proc., *supra*, § 209, pp. 814-816; 3 Wegner et al., Cal. Practice Guide: Civil Trial and Evidence (The Rutter Group 2016) ¶18:510, p. 18-140.) Extrinsic evidence, i.e., evidence outside the judgment roll, may be presented on direct attack of a judgment that is valid on the

---

[2]     What the judgment roll consists of differs depending on whether any defendant answered the complaint. (Code Civ. Proc., § 670.) In default situations, the judgment roll consists of "the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment; if defendant has appeared by demurrer, and the demurrer has been overruled, then notice of the overruling thereof served on defendant's attorney, together with proof of the service; and in case the service so made is by publication, the affidavit for publication of summons, and the order directing the publication of summons." (*Id.* at subd. (a).)

face of the record to rebut the presumption that the judgment is valid. (8 Witkin, Cal. Proc., *supra*, § 5, pp. 589-590; see e.g., *Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249.)[3]

Nonetheless, an exception exists to the rule barring collateral attacks to judgments that appear valid on the face of the record. (8 Witkin, Cal. Proc., *supra*, § 13, pp. 596-597.) As our high court explained many years ago, if a party admits facts showing that a judgment is void, or allows such facts to be established without opposition, then, as a question of law, a court must treat the judgment as void upon its face. (*Hill v. City Cab & Transfer Co.* (1889) 79 Cal. 188, 191 (*Hill*); see also *Brockway etc. Co. v. County of Placer* (1954) 124 Cal.App.2d 371, 376 [" 'if the parties admit or stipulate, or fail to object to the evidence of, the facts showing a lack of jurisdiction, it is then established that the judgment is void as effectively as shown by the record; and whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law.' " (Italics deleted.)]; *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 205 [recognizing the rule in *Hill*]; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 20, fn. 14 [same].) Witkin cites

---

3      Some cases discuss judgments that are "void" or merely "voidable." (See e.g., *Morgan*, *supra*, 105 Cal.App.2d at p. 730.) A "void" judgment means a judgment that is void on the face of the record (i.e., the judgment roll) and subject to either direct or collateral attack, whereas a "voidable" judgment means a judgment that is valid on the face of the record and may not be collaterally attacked. (*Id.* at p. 732; see also Rest.2d, Judgments, Introductory Note to Chapter 5 (Relief From a Judgment), Comment c, p. 143.) We agree with the Restatement Second that use of the void versus voidable "distinction usually introduces confusion into analysis of whether relief from a judgment should be granted to a particular applicant in a particular forum." (Rest.2d, *supra*, at p. 143.)

11

*Thompson v. Cook* (1942) 20 Cal.2d 564, 569 and *Garrison v. Blanchard* (1932) 127 Cal.App. 616, 621 (*Garrison*) as examples of situations where, in a collateral attack, a party has waived the rule excluding extrinsic evidence. (8 Witkin, Cal. Proc., *supra*, § 13, pp. 596-597.) We describe this exception as the "*Hill* rule."

To make matters even more complicated, an exception exists to the *Hill* rule in situations where a collateral attack on a judgment valid on its face involves bona fide purchasers that relied on the judgment. Namely, where a party collaterally attacks a judgment that appears valid on the face of the record, that party "may not have the benefit of the exception to the rule confining a collateral attack to matters appearing on the face of the record [if] the respondents are bona fide purchasers. The title of such a purchaser may not be successfully questioned even though he admits by pleading, or fails to object to the admission in evidence of facts tending to show that the judgment or order upon which it is based is invalid." (*Marlenee v. Brown* (1943) 21 Cal.2d 668, 678.) We describe this as the "exception to the *Hill* rule."

As examples of similar situations applying the exception to the *Hill* rule, the *Marlenee* court cited *Garrison*, *supra*, 127 Cal.App. at pp. 621-623, and a number of cases relied on by the *Garrison* court, including *Newport v. Hatton* (1929) 207 Cal. 515, 519, 520 (*Newport*), *Follette v. Pacific L. & P. Corp.* (1922) 189 Cal. 193, 205, 214 (*Follette*); *Doyle v. Hampton* (1911) 159 Cal. 729, 733, 734 (*Doyle*), *Reeve v. Kennedy* (1872) 43 Cal. 643, 650-653 (*Reeve*), and *Dunn v. Dunn* (1896) 114 Cal. 210 (*Dunn*). (*Marlenee*, *supra*, 21 Cal.2d at p. 678; also, *Garrison*, *supra*, at pp. 621-622.) Review of *Newport*, *Doyle*, *Reeve* and *Dunn* reveal that these cases all involved collateral attacks on

12

prior judgments that were valid on their faces as against bona fide purchasers. (*Newport*, *supra*, at pp. 519-520; *Doyle supra*, at pp. 731-733, 734; *Dunn*, *supra*, at pp. 211-212.) *Follette* also involved a collateral attack on a prior judgment that was valid on its face, but the *Hill* exception applied because the party who purchased the property was not a bona fide purchaser. (*Follette*, *supra* at pp. 205, 214.)

As the foregoing discussion reveals, OCI's argument that it could rely on the default judgment because the default judgment provided "on its face" that the First DOT was cancelled, is wrong. Whether a judgment is void or valid on the face of the record does not refer to looking at a judgment to assess the validity of what the judgment adjudicated. Rather the term impacts how the party *challenging* the judgment proves that the judgment is void, and how a court analyzes the party's claim that a particular judgment is void.

As an example, in this case the default judgment appeared to be valid on the face of the record, i.e., simply looking at the judgment roll. Mirad directly attacked the default judgment in the original action. Accordingly, the trial court did not need to employ the direct versus collateral attack distinction to resolve the issue. (Compare, *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 492-493 ["To determine the propriety of the defendants' motion to vacate the default judgment, this court must look to the rules which govern collateral attacks on judgments since the defendants' motion was not timely under [Code of Civil Procedure] section 473."].) In its direct attack on a default judgment that appeared valid on the face of the record, Mirad properly presented

extrinsic evidence showing it was never served with the summons and complaint to rebut the presumption of validity. (*Strathvale Holdings v. E.B.H.*, *supra*, 126 Cal.App.4th at p. 1249 [extrinsic evidence permissible on direct attack of a judgment that is valid on the face of the record].) The trial court agreed, and set aside the default judgment as void.

B. General Effect of a Void Judgment

" 'A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever.' " (*Andrews v. Superior Court of San Joaquin County* (1946) 29 Cal.2d 208, 214-215.) " ' "A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." ' " (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240, quoting *Bennett v. Wilson* (1898) 122 Cal. 509, 513-514.)

When a court lacks jurisdiction in a fundamental sense, such as lack of authority over the subject matter or the parties, an ensuing judgment is void. (*People v. American Contractors Indemnity. Co.* (2004) 33 Cal.4th 653, 660.) To establish personal jurisdiction, it is essential to comply with the statutory procedures for service of process. (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544.) Accordingly, " 'a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.' " (*Ibid.*) Whether the lack of jurisdiction appears on the face of the judgment roll, or is shown by extrinsic evidence for a judgment that appears

14

valid on its face, "in either case the judgment is for all purposes a nullity—past, present and future." (*Morgan*, *supra*, 105 Cal.App.2d at p. 732.) This is such a case.[4]

## C.  The Void Default Judgment Did Not Pass Title Free of the First DOT

"It is well established that a bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights." (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451.)  The elements of a bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights.  (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251.)  The issue of whether a buyer is a bona fide purchaser is ordinarily a question of fact.  (*612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1279 (*612 South LLC*).)  "A person generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact." (*First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443.)  Information coming from outside the recorded chain of title may not ignored if that information puts the party on notice of other information that reasonably brings into question the state of title reflected in the recorded chain of title.  (*612 South LLC*, *supra*, 184 Cal.App.4th at pp. 1278-1279.)

---

[4]     Appellants assert the default judgment is also void because MERS, the record beneficiary of the First DOT, received no notice of the Hart action.  OCI disputes that MERS was an indispensable party to the Hart action or, in the alternative, OCI argues that appellants should be estopped from making this argument.  We need not address this dispute as the default judgment is void based on lack of jurisdiction over Mirad.

15

Although the trial court concluded, as a matter of law, that OCI qualified as a bona fide purchaser for value, the issue is hotly contested on appeal with appellants arguing that, at a minimum, a triable issue of material fact existed. For purposes of analysis, we assume, without deciding, that OCI qualified as a bona fide purchaser for value.

The law protects innocent purchasers, but "that protection extends only to those who obtained good legal title." (*Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43.) For example, "a forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor." (*Ibid.*) "An instrument that is void *ab initio* is comparable to a blank piece of paper and so necessarily derives no validity from the mere fact that it is recorded." (*Morgan*, *supra*, 105 Cal.App.2d at p. 733.)

The Miller and Starr treatise describes a number of circumstances where defects in the record title will be enforceable against a bona fide purchaser. These circumstances include: where a grantor failed to deliver the deed; an instrument is altered without authority before it is recorded; fraud in the inception; a deed without a description or an inadequate description; and recording a forged or invalid instrument. (4 Miller & Starr, Cal. Real Estate (4th ed. 2016) §§ 10-71-10:75, pp. 10:258-10:265.) For example, "an instrument wholly void, such as an undelivered deed . . . cannot be made the foundation of a good title, even under the equitable doctrine of *bona fide* purchase." (*Trout v. Taylor* (1934) 220 Cal. 652, 656.) Similarly, a forged deed does not divest "the rights of the original owner . . . even as to a [subsequent] bona fide purchaser." (*Wutzke v. Bill Reid Painting Service Inc.*, *supra*, 151 Cal.App.3d at p. 43.) As Miller and Starr explains,

16

"most of the title defects, encumbrances and liens that can be asserted against a bona fide purchaser are covered by a policy of title insurance even if they are not apparent from the public records."  (4 Miller & Starr, Cal. Real Estate (4th ed. 2016) § 10-70, p. 10:255.)

Here, when OCI purchased the property, the recorded default judgment vacated the First DOT.  The default judgment was later adjudicated as void.  The question in this appeal is whether OCI, an assumed bona fide purchaser for value, took title to the property subject to appellants' lien.  There is a dearth of case law on this issue, with each side of this dispute relying on different authority.

Appellants rely on *Morgan*.  (*Morgan*, *supra*, 105 Cal.App.2d 726.)  In *Morgan*, the owner of real property brought an independent action in equity to vacate a recorded quiet title judgment, that appeared valid on its face, quieting title in favor of appellant.  (*Id.* at pp. 728-732.)  The owner properly presented extrinsic evidence showing that it had never been served with the complaint in the quiet title action.  (*Id.* at pp. 729, 731.)  Although the *Morgan* court erroneously termed the quiet title judgment as void, not voidable, it later properly noted that "judgments which on their face or on the judgment roll affirmatively disclose their invalidity" are void judgments and those which do not show the invalidity on their face as voidable judgments.  (*Id.* at p. 732.)  It then noted that the void versus voidable distinction makes no difference because the end result is the same—"[i]f a judgment is void it is not a judgment."  (*Id.* at pp. 732-733.)  We agree with this conclusion as it properly applied the rules for attacking judgments.  (*Ante*, Pt. II.A.)

OCI relies on *Garrison*, *supra*, 127 Cal.App. 616.  Appellants argue that *Garrison* is flawed and that part of its holding addressing service by publication in an action

17

impacting real property has been overruled by the United States Supreme Court. Both parties misread *Garrison*, which admittedly is a challenging case to read. *Garrison* addressed three separate actions pertaining to a single piece of property and involved a number of different legal concepts. Stripped to its essence, however, *Garrison* is merely another example applying the rules we outlined above. (*Ante*, Pt. II.A.) Because OCI's argument relies primarily on *Garrison*, we review the opinion in detail.

Charles Seaton owned property subject to street assessment lien held by Southern California Bond and Finance Corporation (SoCal). (*Garrison*, *supra*, 127 Cal.App. at p. 618.) Seaton died in 1910. (*Ibid.*) Nonetheless, about 13 years later, SoCal sued Seaton to foreclose on the lien, naming Seaton as defendant and purportedly served him by publication of summons (the SoCal action). (*Ibid.*) Seaton, being dead, defaulted and a judgment foreclosing the lien was entered against him. (*Ibid.*) After foreclosing on the lien, SoCal purchased the property. (*Ibid.*) SoCal conveyed the property to Josephine Blanchard. (*Ibid.*)

Blanchard sued Seaton, over 15 years *after* Seaton's death, to quiet her title to the property (the Blanchard action). (*Garrison*, *supra*, 127 Cal.App. at p. 618.) The trial court entered a default and default judgment against Seaton quieting title to the property in favor of Blanchard based on a false affidavit showing personal service on Seaton. (*Ibid.*) Thereafter, Blanchard conveyed the property to C. E. Rawson, who conveyed the property to Flora Ellis. (*Ibid.*) Seaton's estate learned of the Blanchard action, substituted in as the defendant, and moved to set aside the judgment arguing that the judgment was void based on the false affidavit of personal service. (*Id.* at p. 619.) The

18

trial court in the Blanchard action properly vacated the default and default quiet title judgment against Seaton.[5]  (*Ibid.*)  The estate then filed a separate action against Ellis (the estate action) to quiet title to the property.  (*Ibid.*)  Ellis, Blanchard and others filed a cross-complaint in the estate action seeking a judgment quieting title to the property in their favor.  (*Id.* at p. 617.)

About two years later, while the estate action was still pending, the Blanchard matter went to trial and Seaton's estate recovered judgment, quieting the estate's title to the property.  (*Garrison*, *supra*, 127 Cal.App. at p. 619.)  Although the estate obviously knew of Ellis's interest in the property, the estate never made her a party to the Blanchard action and Ellis did not know of the judgment quieting title to the property in favor of the estate.  (*Ibid.*)  The *Garrison* court agreed that the trial court in the Blanchard action properly set aside the default and default judgment as void under the *Hill* rule based on the false affidavit of personal service on a dead man.  (*Garrison*, *supra*, 127 Cal.App. at p. 621, citing *Hill*, *supra*, 79 Cal. 188.)  We agree with this conclusion.

The *Garrison* court then noted, however, that Ellis did not have notice of the order vacating the default and default judgment in the Blanchard action.  (*Garrison*, *supra*, 127 Cal.App. at p. 621.)  Nor did Ellis have notice of the subsequent quiet title judgment in favor of the estate in the Blanchard action.  (*Ibid.*)  The *Garrison* court described these events as "false quantities" because the quiet title issue decided in the Blanchard action

---

5       The estate's motion was a direct attack on the Blanchard default quiet title judgment, that appeared valid on its face, but where extrinsic evidence revealed its invalidity.  (*Ante*, Pt. II.A.)

19

was relitigated in the estate action where Ellis, a bona fide purchaser, prevailed. (*Ibid.*)

We also agree with this conclusion as the result would be the same under current law

governing quiet title actions. The framework for quiet title actions is now codified in

Code of Civil Procedure sections 760.010 through 764.060. As relevant here, Code of

Civil Procedure section 764.045 states that a judgment is not effective against a person

with a recorded claim at the time the judgment is recorded who is not made a party to the

action, or a person without a recorded claim who was not made a party to the action if

that person's claim was actually known to the plaintiff at any time before the judgment

was entered, or where the claim would have been reasonably apparent from an inspection

of the property.[6]

In the estate action, the trial court entered a judgment on the cross-complaint

quieting title to the property in favor of Ellis. (*Garrison*, *supra*, 127 Cal.App. at p. 617.)

Seaton's estate appealed from the quiet title judgment against it. (*Ibid.*) The sole issue on

appeal was the propriety of the quiet title in favor of Ellis as against the estate. The

*Garrison* court affirmed the quiet title judgment in favor of Ellis. (*Ibid.*) We agree with

this result. The *Garrison* court correctly described the estate's quiet title action as a

---

[6]    We note that the Hart action sought cancellation of an instrument, not to quiet title. Accordingly, the parties' reliance on the quiet title statutes is misplaced. As an aside, it is likely that a default judgment would not have been entered against appellants had Hart alleged a quiet title claim. In default situations in a quiet title action, a trial court must hold an evidentiary hearing where the court considers evidence of the plaintiff's title. (Code Civ. Proc., § 764.010.) Had Hart brought a quiet title action, the trial court would have required proof of his allegations that he had legally rescinded the loan under the Truth in Lending Act by delivering a notice of rescission to Mirad and that he had repaid the loan in full.

20

collateral attack on the Blanchard quiet title default judgment that appeared valid on the face of the record. (*Id.* at pp. 622-623.) Although the evidence presented by the parties revealed that the Blanchard quiet title default judgment was invalid (i.e., the *Hill* rule), the exception to the *Hill* rule applied because Ellis was a bona fide purchaser.

In summary, *Garrison* is inapposite as it involved a collateral attack on a prior judgment that appeared valid on its face. (*Garrison*, *supra*, 127 Cal.App. at pp. 621-623.) The instant case does not involve a collateral attack on a prior judgment; thus, the rules governing such attacks, and the cases addressing such attacks, do not apply. Additionally, the issue before us is not the propriety of the order declaring the default judgment void. As we already noted, OCI does not dispute that the default judgment in favor of Hart is void. The sole issue is the *impact* of the void judgment on a purported bona fide purchaser. We conclude that a void judgment in the chain of title has the effect of nullifying a subsequent transfer, including a transfer to a purported bona fide purchaser. *Gray v. Hawes* (1857) 8 Cal. 562 (*Gray*), an almost 160 year-old California Supreme Court opinion supports our conclusion.

In *Gray*, David A. Cheever owned property in San Francisco. (*Gray*, *supra*, 8 Cal. at p. 562.) In 1850, Isaac Norman obtained a judgment against Cheever and recorded the judgment (the Norman judgment). (*Id.* at pp. 562-563.) The Norman judgment ultimately resulted in Cheever's property being levied on and sold by the sheriff. (*Id.* at p. 563.) Norman purchased the property and, after some intervening conveyances, plaintiff Gray, a purported bona fide purchaser, purchased the property. (*Id.* at pp. 562, 564.) In a direct attack on the Norman judgment, Cheever argued (among other things)

21

that the court lacked jurisdiction over him. (*Id.* at p. 563.) Ultimately, the Supreme Court reversed the Norman judgment. (*Ibid.*) The following year, Cheever sold the property, with that individual selling the property to defendants. (*Ibid.*)

Plaintiff sued defendants to determine ownership of the property, with the ultimate question being the impact of the reversed Norman judgment in the chain of title. Defendants prevailed and plaintiff appealed from the denial of his new trial motion. (*Gray*, *supra*, 8 Cal. at p. 563.) The California Supreme Court affirmed the judgment in favor of defendants. (*Id.* at p. 569.) The Court explained that although the Norman judgment appeared valid on its face, extrinsic evidence rebutted the presumption of jurisdiction over Cheever. (*Ibid.*) The Court concluded that the Norman judgment against Cheever was void based on lack of jurisdiction and that the void Norman judgment did not convey good title to plaintiff, the purported bona fide purchaser. (*Ibid.*)

The result in *Gray* is in accord with the Restatement First of Judgments which provides, "Where there has been a void judgment which purported to transfer a property interest, a person who purchases the property is not protected and the person against whom the judgment was rendered is entitled to equitable relief against him." (Rest.1st Judgments, § 115, com. j, p. 561.)

The equities also favor appellants. (Civ. Code, § 3543 ["Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."].) Appellants did nothing wrong. Hart, acting in propria persona, kept his action to cancel the First DOT a secret while he negotiated with the loan servicer

22

regarding a forbearance agreement.[7]  OCI and its title insurer were in the best position to discover Hart's scheme.  OCI suspected fraud as it had the seller sign an addendum to the purchase and sale agreement representing that " 'there are no legal, mechanical, fraudulent or any other legal issues that may cause harm or financial loss which may negatively impact the title to this property preceding the sale to Saeed Paymozd or his assignee.' "  OCI obtained a title insurance policy in excess of what it paid for the property.])  Before OCI purchased the property it also asked its title insurer " 'What happens if this [default judgment] gets appealed?'  And they said, 'That's why you have title insurance.' "  We agree.

In summary, even assuming OCI's status as a bona fide purchaser for value (a dubious assumption given the above facts), OCI took title to the property subject to the First DOT.  Accordingly, the trial court erred in granting summary judgment in favor of OCI based on its purported status as a bona fide purchaser.  The matter is remanded for further proceedings in accordance with this decision.

---

[7]     We reject OCI's argument that appellants could have prevented their loss by recording its assignment of the First DOT.  The First DOT expressly provided that the original lender could sell the note and deed of trust, one or more times, *without notice to the borrower* and that the sale might result in a change of the loan servicer.  "Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights.  The notes may thereafter be transferred among members without requiring recordation in the public records."  (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267, disapproved on other grounds by *Yvanova v. New Century Mortg. Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings.

Appellants are entitled to their costs on appeal.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.